UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC, et al.,<br><br>Defendants. | Case No. 1:22-cv-00282-DCN<br>Case No. 1:22-cv-00273-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |
| MICRON TECHNOLOGY, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LONGHORN IP, LLC,<br><br>Defendants. | |

## I. INTRODUCTION

Before the Court are three motions from two connected actions: Micron's Motion for Bond (Longhorn Dkt. 3), Longhorn's Motion to Dismiss (Longhorn Dkt. 7), and Katana's Motion to Dismiss (Katana Dkt. 27). On January 10, 2023, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons below, the Court DENIES Longhorn and Katana's Motions to Dismiss and GRANTS Micron's Motion for Bond.

## II. BACKGROUND

### 1. The Act

The Idaho Bad Faith Assertions of Patent Infringement Act (the "Act") is designed

to discourage patent trolls. It makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint, or any other communication." Idaho Code § 48-1703(1). It also creates a private cause of action for those targeted by bad-faith demand letters, empowering courts to grant equitable relief, costs and fees, and significant punitive damages. Idaho Code § 48-1706.

The Act contains a bond provision:

> Upon motion by a target and a finding by the court that a target has established a reasonable likelihood that a person has made a bad faith assertion of patent infringement in violation of this chapter, *the court shall require the person to post a bond* in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered under this chapter, conditioned upon payment of any amounts finally determined to be due to the target . . . .

Idaho Code § 48-1707 (emphasis added).

### 2. *The Parties*

Micron Technology, Inc.[1] ("Micron") is a major manufacturer of semiconductors headquartered in Boise, Idaho. Longhorn IP, LLC ("Longhorn") is a patent licensing company headquartered in Texas. It does not create products or offer services. Instead, it makes money by asserting a portfolio of patents against companies that do. Through a network of affiliates,[2] it acquires and enforces patents on, among other things, semiconductors. One of its many affiliates is Katana Silicon Technologies, LLC ("Katana"), which owns patents covering semiconductor manufacturing.

---

[1] Two Micron subsidiaries are also parties: Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC.

[2] Micron alleges that this affiliate structure allows Longhorn to aggressively pursue judgments against other companies while remaining judgment-proof itself.

MEMORANDUM DECISION AND ORDER - 2

3.  *The Katana Case*

On March 4, 2022, Katana sued Micron for patent infringement in the U.S. District Court for the Western District of Texas (the "Katana case"). Katana alleged certain Micron products infringed on three of its patents: No. RE38,806 (the "'806 patent"), No. 6,352,879 (the "'879 patent,"), and No.6,731,013 (the "'013 patent"). The '806 patent and the '879 patent cover miniaturized devices that allow for many semiconductor chips to be contained in a small space. These patents expired on December 30, 2018. The '013 patent covers a special wiring substrate for semiconductor devices that relieves connection failure between the semiconductor chip and the terminal section. It expired on July 5, 2021.

Micron, which had previously been sued by a different Longhorn affiliate, perceived Katana's suit to be a bad-faith assertion of patent infringement. It filed an Answer (Katana Dkt. 13) asserting a counterclaim under the Act and seeking equitable relief, costs and fees, and damages. Katana countered with a motion to dismiss Micron's counterclaim, arguing that the Act is preempted because the federal government, not the states, regulates patents. Katana Dkt 27. Micron then asked the U.S. District Court for the Western District of Texas to transfer the Katana case to the District of Idaho and the court agreed. Once the case was in Idaho, the State of Idaho exercised its right to intervene and defend the Act, filing a memorandum in opposition to Katana's Motion to Dismiss. Katana Dkt. 43.

4.  *The Longhorn Case*

The same day Micron filed its Answer and counterclaim in Texas, it sued Longhorn, which allegedly controls Katana, in Idaho state court (the "Longhorn case"). The Longhorn

case alleges that the patent infringement asserted in the Katana case violated the Act. Under Section 48-1707, Micron asked the court to impose a $15 million bond on Longhorn and Katana, asserting that this amount was a good faith estimate of its costs to litigate the claim and the amount reasonably likely to be recovered. *See* Longhorn Dkt. 1-6, at 2–3. Longhorn removed the case here and then moved to dismiss, raising the same constitutional arguments it did in the Katana case. Once again, the State intervened to defend the Act.

Both the Katana and Longhorn cases are now before the Court.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. Accordingly, to avoid dismissal for failure to state a claim, a complaint must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. If a complaint fails to state a plausible claim, "'[a] district court

should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (cleaned up).

### B. Motion for Bond

The Act gives courts nine factors to consider in determining whether a patent is asserted in bad faith:

> (a) [A] person sends a demand letter to a target without first conducting an analysis comparing the claims in the patent to the target's products, services or technology.
> (b) The demand letter does not contain the following information:
> > (i) The patent number;
> > (ii) The name and address of the patent owner or owners and assignee or assignees, if any; and
> > (iii) The factual allegations concerning the specific areas in which the target's products, services and technology infringe the patent or are covered by the claims in the patent.
> (c) The demand letter does not identify specific areas in which the products, services and technology are covered by the claims in the patent.
> (d) The demand letter demands payment of a license fee or response within an unreasonably short period of time.
> (e) The person offers to license the patent for an amount that is not reasonably based on the value of a license to the patent.
> (f) The person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless.
> (g) The claim or assertion of patent infringement is deceptive.
> (h) The person or its subsidiaries or affiliates have previously filed or threatened to file one (1) or more lawsuits alleging patent infringement based on the same or similar claim, the person attempted to enforce the claim of patent infringement in litigation and a court found the claim to be meritless.
> (i) Any other factor the court finds relevant.

Section 48-1703. The Act provides another four factors a court may consider in

determining a patent is *not* asserted in bad faith:

> (a) The person engages in a good faith effort to establish that the target has infringed the patent and to negotiate an appropriate remedy.
> (b) The person makes a substantial investment in the use of the patent or in the production or sale of a product or item covered by the patent.
> (c) The person has:
> > (i) Demonstrated good faith in previous efforts to enforce the patent, or a substantially similar patent; or
> > (ii) Successfully enforced the patent, or a substantially similar patent, through litigation.
> (d) Any other factor the court finds relevant.

*Id.*

## IV. ANALYSIS

The motions at issue raise three major questions. First, is the Act preempted by federal law? Second, has the applicable statute of limitations run? Finally, has Micron pleaded enough facts to state a plausible claim under the Act, and on those facts, is a bond warranted?

### A. Federal Preemption

Longhorn and Katana argue that the Act "cannot exist alongside U.S. patent laws in our federal system" and so is preempted under the Supremacy Clause. Longhorn Dkt. 7-1, at 15. The Supremacy Clause dictates that federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus, federal law preempts incompatible state laws. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015). Preemption comes in three forms: express preemption, field preemption, and conflict preemption. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113–14 (9th Cir. 2022). Field and conflict

preemption are types of implied preemption. *Id.* at 1114.

### 1. Express Preemption

Congress may expressly preempt a state law by passing targeted federal legislation. *Id.* Here, no party has submitted—and the Court has not found—any federal statute expressly preempting the Act. Further, the Federal Circuit has held that federal patent law does not generally preempt state unfair competition law, which the Act could be read to be. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332–33 (Fed. Cir. 1998), overruled on other grounds by *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). For these reasons, the Court finds that the Act is not expressly preempted.

### 2. Implied Preemption

Federal statutes may impliedly preempt state ones. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). The Supreme Court, however, has sometimes applied a presumption against implied preemption. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). In *Wyeth*, the Court applied the presumption and upheld a state law regulating drug labelling, despite noting that the Federal government had historically regulated this field. *Id.* (establishing an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). *But see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (refusing to apply the presumption to a fraud case against a federal agency because the relationship between federal agencies and regulated parties is "inherently federal in character"); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013)

(declining to apply the presumption to a state law governing voter-registration officials because state regulation of congressional elections "has always existed subject to the express qualification that it terminates according to federal law").

Patent law is quintessentially federal. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). States have no authority to issue patents or protect intellectual property in similar ways. *Id.* But they do have authority to protect businesses and regulate unfair competition. *See Hunter Douglas*, 153 F.3d at 1332–33.

This case pits the federal government's exclusive right to issue and regulate patent protections against Idaho's police power to protect its businesses from harassment. Though the question is close, the Court finds that the fundamentally federal nature of patents weighs against applying the presumption. Thus, because of the inherently federal subject matter at issue here, the Court will address the implied preemption arguments without applying any presumption.

Implied preemption can be divided into two general categories: field preemption and conflict preemption. *Association des Eleveurs de Canards*, 33 F.4th at 1114. The Court will address each one in turn.

### a. Field Preemption

Field preemption occurs "when the scope of a federal statute indicates that Congress intended federal law to occupy a field exclusively." *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 630 (2012) (cleaned up). Here, the federal government occupies the field of patent issuance. *See Bonito Boats*, 489 U.S. at 156 (1989). Still, state law is not displaced just because it relates to intellectual property. *Id.* "[T]he states are free to regulate the use

of . . . intellectual property in any manner not inconsistent with federal law." *Id.* (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)). "The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Wyeth*, 555 U.S. at 575 (quoting *Bonito Boats*, 489 U.S. at 166–167).

Here, more than half of the states[3] have adopted statutes outlawing bad-faith patent assertion. These state laws do not establish quasi-patent protections. Instead, they allow damages against those who abuse the federal patent system. Congress, by contrast, has neither passed legislation outlawing bad faith patent assertion nor established a standard for finding bad faith.[4]

By choosing not to legislate on the issue of bad-faith patent assertion, Congress has created a policy vacuum. Many states have stepped into that vacuum to protect local businesses from shakedowns at the hands of patent trolls. Considering there are more than 30 state acts prohibiting bad faith patent assertion, it is reasonable to assume that Congress knows about these acts and that its continued silence constitutes acquiescence. *See Wyeth*, 555 U.S. at 575. Thus, the Court finds that field preemption does not render the Act

---

[3] *Guide to State Patent Legislation*, Patent Progress, (May 1, 2019), https://web.archive.org/web/20190911174618/https://www.patentprogress.org/patent-progress-legislation-guides/patent-progresss-guide-state-patent-legislation/ (identifying thirty-three states with bad faith patent assertions statutes) (accessed via the Wayback Machine as the site appeared on Sep. 11, 2019).

[4] The federal standard for finding bad faith is the product of caselaw, not legislation. *See Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375–77 (Fed. Cir. 2004) (holding that bad faith has both an objective and subjective component).

unconstitutional.

b. Conflict Preemption

"[C]onflict preemption arises when state law conflicts with a federal statute." *Ass'n des Éleveurs de Canards*, 33 F.4th at 1114. Conflict preemption has at least two subcategories of its own: impossibility preemption and obstacle preemption. *See id.*

*i. Impossibility Preemption*

Impossibility preemption occurs "where it is impossible for a private party to comply with both state and federal law." *Crosby*, 530 U.S. at 372. Here, Longhorn and Katana argue that the Act conflicts with federal law in at least two ways. Both arguments involve the way courts apply allegedly competing standards, not the way private parties comply with them. The Court will nevertheless consider whether the Act makes it impossible for courts to apply both state and federal standards.

First, Longhorn and Katana argue the Act contradicts Federal law because it improperly substitutes a set of decision-making factors for the federal standard—a simple presumption of good faith. Federal law dictates that "[a] patent shall be presumed valid." 35 U.S.C.A. § 282; *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("the assertion of a duly granted patent is [presumed to be] made in good faith."). "This presumption is overcome only by affirmative evidence of bad faith." *C.R. Bard, Inc.*, 157 F.3d at 1369. The Act, on the other hand, supplies courts with a series of factors to consider in determining whether a patent is being asserted in bad faith. The list is open ended: it includes the catch-all "[a]ny other factor the court finds relevant." Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d).

The Act does not make compliance with federal law impossible. In fact, it plays in close harmony with the federal standard. By providing examples of evidence that might overcome the presumption of good faith, the state legislature has not supplanted that presumption. If anything, the Act facilitates the application of the federal standard by illustrating what kinds of behavior could constitute bad faith. The list of factors, which includes "any other factor the court finds relevant," leaves courts free to consider and follow federal guidance. Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d).

It is true that the Act contains factors a court may consider "as evidence that a person has *not* made a bad faith assertion of patent infringement." Idaho Code § 48-1703(3)(3) (emphasis added). The inclusion of these factors, however, does not negate the presumption of good faith, nor does the Act require courts to make an affirmative finding of good faith before a patent may be enforced. The Act is concerned only with bad faith patent assertion, not general patent enforcement, and the language of Section 48-1703 is remarkably permissive. It offers factors that courts *may* consider, including—twice—a sweeping catch-all that invites courts to consider whatever other factors they find relevant. *See* Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d). How, (and whether), a court applies the factors is left to the judge's discretion.

Because a court must follow federal law, the factors in Section 48-1703 are best viewed as a supplement to the federal standard, not an obstacle to it. Courts must apply the factors in a manner consistent with the federal presumption of good faith, and nothing in the Act prevents them from doing so. For these reasons, the Court finds that the factors in Section    48-1703    are    compatible    with    federal    law    and    do    not    engage

impossibility preemption.

Second, Longhorn and Katana argue the Act impermissibly allows courts to find that patents are being asserted in bad faith without specifically finding evidence of both objective and subjective bad faith, as Federal law requires. State laws creating liability for asserting a patent "are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1304 (Fed. Cir. 2018). Bad faith requires a showing that the claims of infringement are both objectively baseless and asserted in subjective bad faith. *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1375–77 (Fed. Cir. 2004).

Here, in a single factor, the Act provides that courts may consider whether "[t]he person asserting a claim or allegation of patent infringement acts in subjective bad faith, or a reasonable actor in the person's position would know or reasonably should know that such assertion is meritless." Idaho Code § 48-1703(2)(f)).

Unlike the Federal standard, which requires a specific finding of both objective and subjective bad faith, the Act's factor could be read to permit consideration of only one or the other. The problem is the difference between "and" and "or." This inconsistency in conjunctions might create an issue, were it not for the catch-all clauses in Section 48-1703, which allow courts to consider any other factor they find relevant. *See* Idaho Code §§ 48-1703(2)(i); 48-1703(3)(d). Courts applying the Act must consider the federal standard—requiring both objective and subjective findings—as a relevant factor, and the Act allows them to do so. The Act and federal law are not mutually exclusive, and so impossibility preemption does not apply.

### ii. Obstacle Preemption

Obstacle preemption occurs where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 373. "[S]tate regulation of intellectual property must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Bonito Boats,* 489 U.S. at 152. In *Bonito Boats*, a Florida statute barred people from duplicating a proprietary molding process used for making boat hulls, or selling duplicated hulls, effectively granting this unpatented molding process greater protection than it would have received under federal patent laws. *Id.* at 144–45. The Supreme Court held that this state law improperly upset the balance of interests Congress struck in its patent laws, and so was preempted. *Id.* at 152. The Court held that, when it is clear how patent laws strike the balance between "the desire to freely exploit the full potential of our inventive resources and the need to create an incentive to deploy those resources," the states may not second guess Congress' judgment by passing more stringent intellectual property protections. *See id.*

Similarly, at least one federal court has found that a state may not disrupt the "congressionally chosen calculus of litigation incentives and disincentives" by providing for attorneys' fees in patent cases other than those available under federal law. *Bldg. Innovation Indus., LLC v. Onken*, 473 F. Supp.2d 978, 986–88 (D. Ariz. 2007).

The Federal Patent Act ("Patent Act") is Congress' primary effort to balance what *Bonito Boats* called "the desire to freely exploit the full potential of our inventive resources" against "the need to create an incentive to deploy those resources." 489 U.S. at 152. To discourage patent infringement, the Patent Act sets a floor for the damages a

successful patentee can receive: nothing less "than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C.A. § 284. It also sets a ceiling: "the court may increase the damages up to three times the amount found or assessed." *Id.*

The Patent Act discourages egregious abuse of the patent system. It provides that courts may, "in exceptional cases," award reasonable attorney fees to a prevailing party. 35 U.S.C. § 285. This provision, which Congress added in 1945, "enabled courts to address unfairness or bad faith in the conduct of the losing party." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014) (cleaned up); *see also Pennsylvania Crusher Co. v. Bethlehem Steel Co.*, 193 F.2d 445, 451 (3rd Cir. 1951) (listing "vexatious or unjustified litigation" as adequate justification for awarding attorneys' fees). Congress recodified the provision in 1952, adopting its current language, but the change did not substantively alter its meaning. *See Octane Fitness*, 572 U.S. at 549. In *Octane Fitness*, the Supreme Court expanded the applicability of this provision, holding that "something less than bad faith" could warrant fee shifting. *Id.* at 555.

Here, the Act strikes a similar balance to the one struck by Congress. It expresses a strong policy against patent infringement:

> (b) . . . Patent holders have every right to enforce their patents when they are valid and infringed, to solicit interest from prospective licensees and to initiate patent enforcement litigation as necessary to protect intellectual property.
>
> (c) The legislature does not wish to interfere with the good faith enforcement of patents or good faith patent litigation. The legislature also recognizes that Idaho is preempted from passing any law that conflicts with federal patent law.

Idaho Code § 48-1701(b)–(c). Though it does not set a floor, it does set a ceiling for the damages a successful party may be entitled to if it proves a patent has been asserted in bad faith. A court may grant a successful plaintiff his actual costs and damages, plus exemplary damages of fifty thousand dollars or three times the total of his damages, costs and fees, whichever is greater. Idaho Code § 48-1706(1).

Longhorn and Katana complain that the Act unfairly chills patentees' ability to enforce their rights: "[b]y regulating federal lawsuits and allowing for quadruple damages, an up-front bond, and injunctive relief, [the Act] strikes a lopsided balance of the rights of patentees and apparent infringers and poses an obstacle to the 'full purposes and objectives' of federal patent laws." Longhorn Dkt. 71, at 19. The Court disagrees.

The Act does not stand as an obstacle to the policy goals Congress expressed in the Patent Act. Both the state Act and the federal Patent Act have the end goal of protecting valid patents without enabling bad-faith or vexatious litigation.

The fee-shifting provision in the Patent Act—which the Supreme Court recently expanded and emphasized in *Octane Fitness*, is especially relevant. Through that provision, Congress intended to allow courts to penalize abusive or bad-faith patent litigation—the identical aim the Idaho Legislature had in passing the Act. Remarkably, the fee-shifting provision in the Patent Act requires a lower evidentiary threshold than the threshold in the Act. Compare 35 U.S.C. § 285 (allowing fee-shifting in "exceptional cases") with Idaho Code Section 48-1703 (allowing damages when a court finds affirmative evidence of bad faith); *Octane Fitness*, 572 U.S. at 555 (holding that the federal Patent Act requires

MEMORANDUM DECISION AND ORDER - 15

"something less than bad faith") with *Globetrotter Software,* 362 F.3d at 1375–77 (holding that state laws creating liability for patent assertion require a showing that the claims of infringement are both objectively baseless and asserted in subjective bad faith). The Act has the same essential purposes as the Patent Act and goes no further than its federal counterpart in pursuing them. There is no conflict of purpose or objective here.

Longhorn and Katana nevertheless assert that there is a conflict of method and execution. They argue that the Act threatens to upset at least one federal policy balance by allowing higher damages for successful defendants than the Patent Act allows successful plaintiffs. The Federal Patent Act allows a court to give successful plaintiffs treble damages. Functionally, the state Act allows a court to grant successful defendants quadruple damages. This disparity allows the inference that the Idaho legislature views bad-faith patent assertion as a bigger problem than Congress does and has attempted to alter the "congressionally chosen calculus of litigation incentives" accordingly. *Onken*, 473 F. Supp.2d at 987.

*Bonito Boats* held this type of alteration would be inappropriate in the context of a state law providing quasi-patent protections. And *Onken* suggests it would be inappropriate in the context of a state law creating new fee shifting provisions separate from those already in the federal Patent Act. Neither decision, however, fits neatly with the facts here.

Besides addressing mirror-opposite state activity (in *Bonito Boats,* Florida was trying to protect IP owners from infringement by businesses; here, Idaho is trying to protect businesses from harassment by IP owners), *Bonito Boats* forbade states from upsetting Congress' solution to the problem of how to motivate creators without stifling creativity.

Unlike that high-level, strategic compromise, this case implicates a more tactical compromise: should the risks and potential rewards of litigation favor IP owners or businesses?

Congress has not directly addressed this issue in the context of bonds and damages. *Onken* expressly addresses this tactical compromise, but only in the context of attorneys' fees, which are already provided for by the Patent Act. By contrast, there is no federal statute on bad faith assertion of patent infringement. The distinction is important because fee shifting alone does not address the entire calculus of litigation incentives: it may not be an effective deterrent against patent trolls who have compartmentalized their liability and assets to avoid the potential negative consequences of litigation.[5] Damages and bonds are a developing part of the calculus, which Congress has yet to weigh in on. As discussed, this is an area where Congress has been content to let states do the legislating—and courts asked to review those state acts have upheld their constitutionality. *See NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 212 (M.D.N.C. 2021) (upholding a North Carolina bad-faith patent assertion statute providing for quadruple damages); *Landmark Tech., LLC v. Azure Farms, Inc.*, 2020 WL 1430088, at *5 (D. Or. Mar. 24, 2020)

---

[5] At least one state legislature has made such a finding:

> In lawsuits involving abusive patent assertions, an accused infringer prevailing on the merits may be awarded costs and, less frequently, fees. These awards do not serve as a deterrent to abusive patent assertion entities who have limited liability, as these companies may hold no cash or other assets. North Carolina has a strong interest in making sure that prevailing North Carolina companies sued by abusive patent assertion[] entities can recover what is awarded to them.

N.C. Gen. Stat. § 75-141(9).

MEMORANDUM DECISION AND ORDER - 17

(upholding a similar Oregon statute); *Washington v. Landmark Tech. A, LLC*, No. 2:21-cv-00728-RSM (ECF No. 35), slip op. at 12 (W.D. Wash. Oct. 28, 2022) (upholding a similar Washington statute).

The Act does not intrude on Congress' exclusive right to grant patents. Nor does it alter any policy line that Congress has expressly drawn. Without more guidance from Congress, the Court will not strike down the Act just because of the difference between triple and quadruple damages. Because the Act is not inconsistent with Congress' express policies, the Court finds that it is not an obstacle to them. *See Aronson*, 440 U.S. at 262 (upholding a contract that had the effect of a patent because it was not inconsistent with express congressional policy).

### 3. The Noerr-Pennington Doctrine

Longhorn and Katana argue that, by making it unlawful to assert bad-faith patent infringement in a complaint, the Act impermissibly interferes with the ability to sue in federal court. The *Noerr–Pennington doctrine* immunizes defendants against antitrust liability for engaging in conduct aimed at influencing decision-making by the government, including litigation. *Octane Fitness*, 572 U.S. at 555–56. Courts have applied the *Noerr-Pennington* doctrine to bar "any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 955 (S.D. Cal. 1996) (collecting cases and finding that *Noerr* immunity is "constitutional and rooted in the First Amendment right to petition").

The *Noerr-Pennington* doctrine, however, does not protect defendants engaged in "sham litigation." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49,

51 (1993). Sham litigation is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Globetrotter Software*, 362 F.3d at 1376. "In other words, the plaintiff must have brought baseless claims in . . . [subjective] bad faith." *Octane Fitness*, 572 U.S. at 556. The fundamental question is one of reasonableness. *See Globetrotter Software*, 362 F.3d at 1376.

Because application of the *Noerr-Pennington* Doctrine requires a fact-intensive reasonableness determination, it is impractical to consider at the motion-to-dismiss stage. *Washington v. Landmark Tech. A, LLC*,  No. 2:21-cv-00728-RSM (ECF No. 35), slip op. at 12 (W.D. Wash. Oct. 28, 2022) (declining to decide whether Washington's bad faith patent assertion statute violated the *Noerr–Pennington* doctrine at the motion-to-dismiss stage); *see also NAPCO, Inc.*, 555 F. Supp. 3d at 215 (declining to find *Noerr-Pennington* immunity on a motion to dismiss because "reasonableness is a question of fact").

Here, the Court is asked to determine whether the Act unconstitutionally interferes with Longhorn and Katana's First Amendment right to petition the government for redress of grievances, which requires it to determine whether they are engaged in sham litigation. Both questions are fact intensive and premature at the motion-to-dismiss stage. The Court may take up these arguments upon the completion of discovery, but it will not dismiss any complaints on *Noerr-Pennington* grounds before then.

## B.  Time Bars

Longhorn and Katana argue that Micron's claims under the Act have been barred since 2021. The Act, in creating a private cause of action, also creates a limitations period:

No private action may be brought under the provisions of this chapter more than three (3) years after the cause of action accrues. A cause of action shall be deemed to have accrued when the party bringing an action under the provisions of the chapter knows, or in the exercise of reasonable care should have known, about the violation of the provisions of this chapter. *Each bad faith assertion of patent infringement constitutes a separate violation of this chapter.*

Idaho Code § 48-1706(3) (emphasis added). The Act prohibits bad-faith assertions of patent infringement "in a demand letter, a complaint, or any other communication." Idaho Code § 48-1703(1).

Here, Micron knew about Katana and Longhorn's intent to assert their patents as early as 2018, when Katana sent demand letters and met with Micron at its Boise headquarters. Katana filed its complaint on March 4, 2022, some three years after first threatening to do so. Micron made its first claim under the Act on June 6, 2022.

It is undisputed that, for purposes of the statute of limitations, a cause of action accrued in 2018 when Micron first knew of Longhorn and Katana's intent to assert their patents. The issue is whether the Katana complaint constituted a new "assertion" of the Katana patents, or merely another step in an ongoing assertion that began in 2018. The Katana complaint, Longhorn argues, was an escalation of an existing assertion, not a new assertion that triggered a new limitations period. Micron counters that each demand letter and complaint constituted an independent assertion that triggered a distinct limitation period.[6]

---

[6] Micron also argues that Longhorn and Katana's actions constituted a continuing tort such that the statute of limitations should be tolled. The Court does not decide this question here because, at this stage of the proceedings, it is moot.

Micron is within the statute of limitations. The Act lists complaints as unlawful acts distinct from demand letters. *See* Idaho Code § 48-1703(1)) (making it "unlawful for a person to make a bad faith assertion of patent infringement *in a demand letter, a complaint, or any other communication*.") (emphasis added). Because a demand letter usually precedes a complaint, this language is redundant if a complaint that follows a demand letter does not constitute a separate assertion. Further, "[e]ach bad faith assertion of patent infringement constitutes a separate violation." Idaho Code § 48-1706(3). This provision suggests that, in commencing patent litigation against a target, a person may commit a separate violation at each step or escalation of the process, rather than committing one extended violation that begins with the demand letter and ends three years later, no matter what escalatory tactics are employed in between.

Finally, Longhorn's reading of the limitations provision would allow bad actors to defeat the Act through gamesmanship: if a patent troll can escape the Act by waiting three years between sending a demand letter and commencing litigation, the limitations provision swallows the Act. For these reasons, the Court finds that by sending a complaint, Longhorn and Katana made a new assertion that triggered a new limitations period, which has not yet run.

## C. Adequacy of the Pleadings

Longhorn and Katana argue that Micron has failed to plead a plausible claim for bad-faith patent assertion and that the Court must therefore dismiss Micron's complaint in the Longhorn case and counterclaim in the Katana case under Rules 8 and 12(b)(6).

To escape dismissal under Rule 12(b)(6), a complaint must "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). This "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. Thus, the issue here is whether Micron's complaint contains enough factual content to state a facially plausible claim that Longhorn and Katana are liable under the Act. The Court presumes that Longhorn and Katana have asserted their patents in good faith, though this presumption may be overcome by affirmative evidence. 35 U.S.C.A. § 282; *C.R. Bard, Inc.*, 157 F.3d at 1369.

### 1. Factors for Bad Faith

The Act allows a court to make a determination of bad faith using factors including the analysis that led to sending a demand letter, Idaho Code Section 48-1703(2)(a), the nature of the demand letter and the information it contained, Section 48-1703(2)(b)–(c), the sum of money sought in the demand letter, Section 48-1703(2)(d)–(e), the subjective and objective good faith of the patentee, Section 48-1703(2)(f), the patentee's history of assertion, and any deception present in the assertion. Idaho Code § 48-1703(2)(g)–(h).

#### a. Section 48-1703(2)(a)

Under Section 48-1703(2)(a), Micron has pleaded enough facts to support a conclusion that Katana sent a demand letter without first conducting an adequate analysis comparing its patents to Micron's products. Micron's complaint distinguishes the subject matter of the Katana patents from that of the allegedly infringing Micron products. For example, the asserted '806 patent covers a semiconductor device sealed with a resin, which

the allegedly infringing Micron product does not contain, being sealed instead with a "thermoplastic encapsulant." Micron asserts that, had Longhorn and Katana properly compared the patents against the allegedly infringing products, it would have discovered such a critical difference.

   b.   Section 48-1703(2)(b)–(c)

There is no information in the pleadings about whether the demand letters contained the patent number, name and address of the patent owner, or the specific areas in which Micron's products infringed on covered claims. Without this information, the factors in Section 48-1703(2)(b)–(c) do not weigh either for or against bad faith.

   c.   Section 48-1703(2)(d)–(e)

The pleadings do not mention the sum of money that Longhorn and Katana sought from Micron in the demand letters. Thus, the factors in Section 48-1703(2)(d)–(e) are not probative either.

   d.   Section 48-1703(2)(f)

Micron has pleaded sufficient facts to support a conclusion that Longhorn and Katana acted in subjective bad faith. In its initial demand letter, Katana "in what can only be characterized as a thinly-veiled threat . . . pointed out that its . . . patents had been asserted against other companies." Dkt. 1-4, at 12. When the parties later met at Micron's Boise headquarters, "Longhorn communicated that the amounts demanded would increase as time passed because Longhorn was only just beginning its campaign of seeking licensing fees from companies based on the Katana portfolio. In [the Longhorn's principal]'s words, they were offering Micron an 'early bird special.'" Dkt. 1-4, at 14–15. Later, Longhorn's

MEMORANDUM DECISION AND ORDER - 23

representative suggested that Micron look over the patents in the portfolio of another Longhorn affiliate, Carthage Silicon Innovations, LLC. Micron took this suggestion to mean that Longhorn intended to pursue every available avenue to assert patent infringement claims against Micron, no matter which affiliate held the patents or how applicable those patents were.

Further, Micron has pleaded sufficient facts to support a conclusion that Longhorn and Katana's claims are objectively meritless. Micron pleads that the asserted patents are invalid. First, according to Micron's complaint, the asserted patents have expired. The '879 and '806 patents expired on December 30, 2018, and the '013 patent expired on July 5, 2021.

Micron further alleges that these patents are invalid "because the technology claimed in [them] was known, discussed in literature, described in other patents, and used in multiple commercially available products, all prior to the priority dates of the Katana patents." Dkt. 1-4, at 15. Micron's complaint takes pains to list, for each asserted patent, preexisting inventions and literature describing the same innovations that Longhorn and Katana claim their patents cover. For example, as early as 1998, Intel Corporation had developed a semiconductor package with the same key elements as the subject matter of the '879 patent. Thus, Micron has adequately pleaded that Longhorn and Katana have acted in objective and subjective bad faith.

### e. Section 48-1703(2)(g)

Micron has pleaded enough facts to support a conclusion that Longhorn and Katana's assertion of patent infringement is deceptive. Micron's complaint says that

"Longhorn purports to assert claims of ongoing, current infringement for expired patents"—in other words, that it engages in deception. Micron's complaint further alleges that Katana is a mere puppet of Longhorn, which drives the bad-faith patent assertion through its affiliates. Though Longhorn otherwise portrays itself as a completely separate entity, it lists its affiliates' patent portfolios on its website in a manner suggesting it considers those patents to be its own assets. The sole manager and member of Longhorn is also the sole member and manager of each of its affiliates. Longhorn is represented by the same counsel as Katana and appears to have identical interests. Katana informed Micron that, to escape liability, it would need to secure licenses from two other Longhorn affiliates: Hamilcar Barca IP, LLC, and Trenchant Blade Technologies, LLC. On these facts, it is plausible that Longhorn and Katana have portrayed both their patents and themselves deceptively.

      f.   <u>Section 48-1703(2)(h)</u>

Micron has pleaded enough facts to indicate that Longhorn and Katana have filed or threatened to file lawsuits based on a similar claim that was meritless. Micron claims to have a history with one of Longhorn's affiliates, Lone Star Silicon Solutions, LLC, ("Lone Star") who sued Micron for patent infringement in 2016. In that case, the Patent Trial and Appeal Board ruled the disputed patents were invalid—the covered inventions were not patentable because "the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention of the patents." Dkt. 1-4, at 10. Judge Alsup, of the Northern District of California, dismissed the district court litigation and "criticized Lone Star for having incorrectly stated that it was the sole owner of the asserted

patents and having engaged in a 'litigation gimmick.'" Dkt 1-4, at 10. Micron agreed to pay Lone Star a sum in exchange for a promise not to appeal.

In its Complaint, Micron alleges that Longhorn is a non-practicing entity with a pattern of asserting patents in bad faith through a network of affiliates. Longhorn and Katana do not use their patents in commerce. Their only business is litigation. Longhorn and Katana may have made a substantial investment in purchasing the patents, but it was not an investment in research or development.

### 2. *Factors Against Finding Bad Faith*

As factors to consider in finding that the patentee *is not acting in bad faith*, the Act lists the patentee's good-faith efforts to negotiate an appropriate remedy, Idaho Code Section 48-1703(3)(a), the patentee's investment in the use of the patent or use of it in manufacturing, Section 48-1703(3)(b), the patentee's history of successfully enforcing the patent in good faith, Section 48-1703(3)(c), and any other factor the court finds relevant. Idaho Code § 48-1703(3)(d). Because patents are already presumed to be asserted in good faith, the Court does not consider these factors to be probative and will not analyze them. *See infra* section A2(b)(*i*) (discussing the federal presumption of good faith and its interplay with the factors in Idaho Code Section 48-1703(3)(a)–(d)).

The bottom line is that Micron's complaint pleads enough facts to allow a finding under the statutory factors that Longhorn and Katana acted in bad faith. This is enough affirmative evidence, if accepted as true, to overcome the presumption of good faith. Thus, Micron has stated a claim under the Act and dismissal is inappropriate. For all the reasons above, Longhorn and Katana's motions to dismiss are DENIED.

### 1. Bond

As an initial matter, the Court is constitutionally empowered to impose a bond. When sitting in diversity—as this Court is in the Longhorn case—federal courts apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). In *Ice Castles, LLC, v. LaBelle Lake Ice Palace, LLC*, 2021 WL 3085479, at *3 (D. Idaho July 21, 2021), the Court declined to wade into the "vexing question" of whether the Act's bond provision was substantive or procedural. After a review of similar statutes from other states, however, the Court is satisfied that the bond is not merely procedural—it is a substantive provision that discourages bad-faith patent assertion in and of itself.

North Carolina's equivalent statute, for instance, provides for both damages and a bond because patent trolls "may hold no cash or other assets" to pay a damages award and the state "has a strong interest in making sure that prevailing . . . companies sued by abusive patent assertion[] entities can recover what is awarded to them." N.C. Gen. Stat. § 75-141(9). The bond provision thus serves a similar purpose to the damages provisions and furthers the purpose of the statute. Though the Act does not explicitly list such a finding, the Court is persuaded that the same rationale applies. Further, if the Court were to find that the provision was procedural, it would create a forum shopping problem: plaintiffs would favor the state courts where the bond provision was available, while defendants would favor the federal courts. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (holding that, in distinguishing substantive and procedural laws, courts must be cognizant of *Erie*'s dual aims: "discouragement of forum-shopping and avoidance of inequitable administration of the laws"). Because the bond provision is substantive, it is

within the power of the Court to impose a bond.

The Act provides the standard for imposing a bond. Idaho Code § 48-1707. If, using the Section 48-1703 factors, a court determines there is a reasonable likelihood that a patent is being asserted in bad faith, it must require the party asserting the patent to "post a bond in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered" under the Act. *Id.*

Unlike the 12(b)(6) standard, which requires facial plausibility, the Act requires merely "a reasonable possibility." Thus, the Court must determine whether there is a reasonable possibility that Longhorn and Katana asserted infringement in bad faith.

Because the higher 12(b)(6) standard has been satisfied, the lower statutory standard is also necessarily satisfied. The above analysis on the motion to dismiss serves also to show that, under the Act, a bond is required.

Micron asserts that the Court should require a bond of $15 million. It reached this number by using the American Intellectual Property Law Association's report on the cost of defending patent suits. This report estimates that the cost to litigate against a non-practicing entity over one patent from motion practice through to appeal is $4,558,000, assuming that more than $25 million is at stake. Dkt. 15-37, at 17. Micron acknowledges that Longhorn has not yet made a specific demand for damages. Nevertheless, Micron relies on this $25-million-plus estimate from the report to calculate that the cost of defending a three-patent case is $3.75 million. That amount, plus treble damages, brings its estimate to $15 million.

There is no reason to find that this estimate is made in bad faith. The Act, however,

does not obligate the Court to reflexively accept a party's good faith estimate—in fact, it does not specify who, between the parties and the Court, is responsible for making such an estimate. *See* Idaho Code § 48-1707 (providing for a bond "in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered . . .").

The Court accepts Micron's estimate as it relates to litigation over a single patent. That is, a conservative estimate of litigating a single-patent suit from pre-trial through to appeal is $1.25 million. The Court rejects, however, the assumption that, by tripling that sum, one can accurately predict the cost of litigating a three-patent suit. Although patent litigation does become more expensive the more patents are at issue, there are significant efficiencies inherent in bundling disputed patents together into a single suit. For instance, depositions need only be taken once—not three times—and pleadings likewise need only be filed once. Thus, for purposes of this suit, the Court finds that the additional two patents could be reasonably expected to increase Micron's cost of litigation by a total of $.75 million. Two million dollars, therefore, is a good-faith estimate of Micron's costs to litigate the claims and an amount reasonably likely to be recovered under the Act. That sum, plus treble damages, yields an $8 million bond. The Court will impose a bond in that amount. Micron's Motion for Bond is GRANTED.

## V. CONCLUSION

The Court finds that the Act is not preempted by federal law, that its limitations period has not run, and that Micron has adequately pleaded a claim under it. Accordingly, the Court will DENY Longhorn and Katana's Motions to Dismiss and GRANT Micron's

Motion for Bond.

## IV. ORDER

1. Longhorn's Motion to Dismiss (Case 1:22-cv-00273, Dkt. 7) is DENIED.

2. Katana's Motion to Dismiss (Case 1:22-cv-00282, Dkt. 27) is DENIED.

3. Micron's Motion for Bond (Case 1:22-cv-00273, Dkt. 3) is GRANTED.

    a. Longhorn or Katana must post a bond of $8 million before the Katana case (1:22-cv-00282) may proceed further.

4. This order will be entered in both cases.

DATED: May 3, 2023

David C. Nye
Chief U.S. District Court Judge