UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATANA SILICON TECHNOLOGIES LLC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC. et al., <br><br> Defendants. | Case No. 1:22-cv-00282-DCN <br> Case No. 1:22-cv-00273-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |
| MICRON TECHNOLOGY, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> LONGHORN IP LLC, <br><br> Defendant. | |

## I. INTRODUCTION

Pending before the Court are identical motions from two connected actions: Longhorn IP LLC's Motion to Stay in Case No. 1:22-cv-00273-DCN (Dkt. 56) and Katana Silicon Technologies LLC's Motion to Stay in Case No. 1:22-cv-00282-DCN (Dkt. 69)[1] (Katana and Longhorn will be referred to jointly as the "Movants."). Micron opposes both motions.

---

[1] Because the motions are identical, and in the interest of concision, when it is necessary to cite to the motions, the Court will cite only to the Docket in Case No. 1:22-cv-00273-DCN.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court finds good cause to GRANT Movants' Motions to Stay.

## II. BACKGROUND

### A. The Act

The Idaho Bad Faith Assertions of Patent Infringement Act (the "Act") is designed to discourage unsavory business practices of non-practicing entities (derogatively referred to as "patent trolls"). It makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint, or any other communication." Idaho Code § 48-1703(1). It also creates a private cause of action for those targeted by bad-faith demand letters and empowers courts to grant equitable relief, costs and fees, and significant punitive damages. Idaho Code § 48-1706.

The Act contains a bond provision:

> Upon motion by a target and a finding by the court that a target has established a reasonable likelihood that a person has made a bad faith assertion of patent infringement in violation of this chapter, the court shall require the person to post a bond in an amount equal to a good faith estimate of the target's costs to litigate the claim and amounts reasonably likely to be recovered under this chapter, conditioned upon payment of any amounts finally determined to be due to the target . . . .

Idaho Code § 48-1707.

## B. The Parties

Micron Technology, Inc.[2] ("Micron") is a major manufacturer of semiconductors headquartered in Boise, Idaho. Longhorn IP, LLC ("Longhorn") is a patent licensing company headquartered in Texas. It does not create products or offer services. Instead, it makes money by asserting a portfolio of patents against companies that do. Through a network of affiliates,[3] Longhorn acquires and enforces patents on, among other things, semiconductors. One of its many affiliates is Katana Silicon Technologies, LLC ("Katana"), which owns patents covering semiconductor manufacturing.

## C. Parallel Cases

On March 4, 2022, Katana sued Micron for patent infringement in the U.S. District Court for the Western District of Texas (the "Katana case"). Katana alleged certain Micron products infringed on three of its patents: No. RE38,806 (the "'806 patent"), No. 6,352,879 (the "'879 patent,"), and No.6,731,013 (the "'013 patent"). The '806 patent and the '879 patent cover miniaturized devices that allow for many semiconductor chips to be contained in a small space. Each expired on December 30, 2018. The '013 patent covers a special wiring substrate for semiconductor devices that relieves connection failure between the semiconductor chip and the terminal section. That patent expired on July 5, 2021.

Micron, which had previously been sued by a different Longhorn affiliate, perceived Katana's suit to be a bad-faith assertion of patent infringement. It filed an Answer (Katana

---

[2] Two Micron subsidiaries are also parties: Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC.

[3] Micron alleges that this affiliate structure allows Longhorn to aggressively pursue judgments against other companies while remaining judgment-proof itself.

MEMORANDUM DECISION AND ORDER - 3

Dkt. 13) asserting a counterclaim under the Act and seeking equitable relief, costs and fees, and damages. Katana countered with a Motion to Dismiss Micron's counterclaim, arguing that the Act is preempted because the federal government, not the state of Idaho, regulates patents. Katana Dkt. 27. Micron then asked the U.S. District Court for the Western District of Texas to transfer the Katana case to the District of Idaho and the court agreed. Once the case was in Idaho, the State of Idaho exercised its right to intervene and defend the Act, filing a memorandum in opposition to Katana's Motion to Dismiss. Katana Dkt. 43.

The same day Micron filed its Answer and counterclaim in Texas, it sued Longhorn, which allegedly controls Katana, in Idaho state court (the "Longhorn case"). The Longhorn case alleges that the patent infringement asserted in the Katana case violated the Act. Under Section 48-1707, Micron asked the court to impose a $15 million bond on Longhorn and Katana, asserting that this amount was a good faith estimate of its costs to litigate the claim and the amount reasonably likely to be recovered. Longhorn removed the case to the District of Idaho and then moved to dismiss, raising the same constitutional arguments it did in the Katana case. Once again, the State of Idaho intervened to defend the Act.

In a Memorandum Decision and Order dated May 3, 2023 (the "Order"), the Court found that the Act was not preempted by federal law and that Micron had properly pleaded a claim thereunder. Longhorn Dkt. 50, at 29; Katana Dkt. 64, at 29. Accordingly, the Court denied both Movants' Motions to Dismiss and granted Micron's Motion for Bond. The Movants promptly appealed the Order to the Federal Circuit. They now ask that these cases be stayed pending a ruling on their appeal.

**D. Inter Partes Review**

After Katana first notified Micron that it was infringing on Katana's patents, Micron filed multiple petitions for inter partes review (IPR) to challenge the validity of the asserted patents. "An IPR proceeding begins when a person other than the patent owner files a petition with the United States Patent and Trademark Office, which is ultimately reviewed by the Patent Trial and Appeal Board (the "PTAB")." 152 Am. Jur. Trials 349, § 3 (Originally published in 2017).

IPR proceedings commonly involve a party who has been sued for patent infringement. *Id.* That party petitions the PTAB, requesting a finding that the patent asserted against them be canceled "as not being novel under 35 U.S.C.A. § 102 or obvious under 35 U.S.C.A. § 103 based on prior art . . . ." *Id.* Simply put, the duty of the PTAB in an IPR is to decide whether a contested patent is valid. On May 15, 2023, two of Micron's petitions were granted, and IPRs were instituted. The Movants also ask that these cases be stayed pending resolution of the instituted IPRs.

### III. LEGAL STANDARD

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-707 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). Determining whether to grant a motion to stay "calls for the exercise of judgment, which must weigh competing

interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

When weighing whether to grant a stay pending an interlocutory appeal, courts consider: (1) whether the movant has made a strong showing that he or she will likely succeed on the merits; (2) whether the movant will be irreparably harmed if a stay is not granted; (3) whether the issuance of a stay will substantially harm the other parties to the proceeding, and (4) the public interest, if any, involved. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Edwards v. PJ Ops Idaho, LLC*, 2022 WL 2953621 (D. Idaho July 26, 2022); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009) (noting that the first two factors of the test are most critical). It is the burden of the moving party to demonstrate that the factors the court considers support its motion. *Nken*, 556 U.S. at 433–34.

In instances where a party requests a stay pending IPR, courts have employed a similar, but distinct test, informed by federal statute. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011); *see, e.g.*, *PDT Original Designs, LLC v. HANGEMRIGHT.COM, LLC*, 2018 WL 1768032 (D. Idaho Apr. 12, 2018); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028 (C.D. Cal. 2013). That test requires a reviewing court to evaluate: (1) whether a stay would simplify the claims and issues presented at trial; (2) whether discovery is completed and whether a trial date is set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *PDT*, 2018 WL 1768032, at *1.

Because the Movants have requested a stay pending both an interlocutory appeal and an IPR, both tests are necessary to resolve the pending motions.

# IV. ANALYSIS

**A. Interlocutory Appeal**

The Court begins by evaluating the propriety of a stay pending the outcome of the Movants' interlocutory appeal of the Order to the Federal Circuit.

*1. Success on the Merits*

In *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011), the Ninth Circuit made clear that under the first factor of this analysis, petitioners requesting a stay "need not demonstrate that it is more likely than not that they will win on the merits." Rather, they need only show that the appeal raises "serious legal questions" or that there is a "fair prospect" or "reasonable probability" of success. *Id.* at 966–78; *Edwards v. PJ Ops Idaho, LLC*, 2022 WL 2953621, at *2 (D. Idaho July 26, 2022). Additionally, a stay is more likely appropriate "where the trial court is charting new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review." *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14 (D. Haw. 1972).

On appeal, the Movants have raised the issues of whether the Act as a whole is preempted by federal patent law, and if not, whether the bond provision in the Act may be interpreted to impinge on federal rights. Dkt. 56, at 9–13. Here, both parties acknowledge that the law surrounding bad-faith-assertion statutes is only just beginning to take shape. Dkt. 56, at 9–13; 59, at 12. While the Court is confident in its analysis of the constitutionality of the Act generally and the bond provision specifically, given the "uncharted" state of the law, it is not inconceivable that the Federal Circuit could decide the issues differently on appeal. At the very least, the questions raised by the Movants are

"serious." Therefore, this factor weighs in favor of granting the stay.

### 2. Irreparable Harm

Under the second factor, a party requesting a stay must show that it will incur irreparable injury if the stay is not granted. *Edwards*, 2022 WL 2953621, at *2 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Further, any asserted injury must be categorically irreparable, rather than simply possible or speculative. *Nken*, 556 U.S. at 434–35.

Curiously, the Movants spend the majority of their analysis under this factor making arguments related to the ongoing PTAB proceedings, and not the pending review by the Federal Circuit. Dkt. 56, at 13–14. Without commenting on the strength that their arguments may or may not possess in a different setting, the Court finds that the arguments are misplaced in a request for a stay pending review by the Federal Circuit.

At the end of their analysis, the Movants mention in passing that if the Court denies their motions to stay pending review by the Federal Circuit, they may face "undue pressure" to settle or abandon their claims. *Id.* at 15. While such an outcome is plausible, it does not rise beyond the level of possibility—the Movants themselves argue only that they *may* face such circumstances. And the Supreme Court has emphasized that a "possibility standard" is not appropriate for evaluation of irreparable harm. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Thus, this factor weighs against granting the stay.

### 3. Harm to Micron

A successful stay motion requires the moving party to show that other parties to the litigation will not be substantially harmed if the motion is granted. *Hilton*, 481 U.S. at 776.

MEMORANDUM DECISION AND ORDER - 8

Here, the Movants argue that: (1) Micron cannot show that a stay will cause it substantial harm, and (2) a stay until the appeal is resolved will allow Micron to better specify its requested damages under the Act because damages under the Act come largely from litigation costs.

The Movants' first argument inappropriately shifts the burden of proof to Micron. As the Court already clarified, a movant, not a respondent, bears the burden of showing that its motion is supported under the four-factor analysis. *Nken*, 556 U.S. at 433–34. Thus, it is not Micron's job to show that it *will* be harmed, but rather, it is the Movants' job to show that Micron *won't* be harmed. The Movants' second argument is not without merit, though it does not necessarily stand to reason that just because Micron may receive some incidental benefit from the stay, it cannot also incur substantial harm.

Micron, on the other hand, raises worries about unnecessary delay and the continued litigation costs associated with a stay. The Court recognizes that delay—loss of time—is a real harm. *See Edwards*, 2022 WL 2953621, at * 5 (finding the loss of time is a cognizable harm to an opposing party). But it also recognizes that significant amounts of time would be wasted—and, therefore, lost—if this litigation were allowed to proceed, only to later be disrupted by new instruction from the Federal Circuit.

Ultimately, because the Movants did not effectively carry their burden, this factor weighs against granting the stay. However, for the reasons discussed immediately above, the Court is not convinced that the harm likely to befall Micron by the stay's imposition is substantial.

MEMORANDUM DECISION AND ORDER - 9

*4. The Public Interest*

The final factor of this analysis requires the Court to consider the public's interest in the resolution of the Movants' motion. *See, e.g.*, *Hilton*, 481 U.S. at 776; *Nat. Res. Def. Council, Inc. v. Winter*, 502 F.3d 859 (9th Cir. 2007). Here, the Movants assert the public's dual interests in avoiding potentially unnecessary litigation and resolving difficult constitutional questions supports a stay. Micron contends that the most important public interest here is the swift resolution of cases and controversies. While acknowledging the importance of resolving controversies swiftly, the Court finds the interests proposed by the Movants to be more compelling.

To the knowledge of the Court, this is the first time the Federal Circuit has evaluated the constitutionality of any bad-faith-assertion statute, let alone a statute bearing the unique features that Idaho's bears. The public has a significant interest in verifying that statutes like Idaho's are constitutionally sound. The combined weight of that concern and the public's interest in eliminating superfluous litigation clearly outweighs the public's admittedly legitimate interest in timely dispute resolution. Thus, this factor weighs in favor of granting the stay.

*5. Conclusion*

In summary, the first and fourth factors weigh in favor of granting the stay and the second and third weigh against. While this is obviously a close question, given the elevated importance of the first two factors *and* the fact that the first factor *strongly* favors the granting of a stay, the Court finds that a stay pending the outcome of the Movants' interlocutory appeal is appropriate.

**B. Inter Partes Review**

The Court turns now to whether the stay should also remain in place pending IPR by the PTAB.

*1. Simplification of Claims and Issues*

Under the first factor of this analysis, the court must answer two questions. The first is whether an IPR decision regarding the validity of Katana's asserted patents would simplify the litigation of Katana's infringement claims against Micron. The second is whether such an IPR decision would simplify the litigation of Micron's bad-faith-assertion claim against Longhorn. The Court finds that both questions must be answered in the affirmative.

Micron expends little, if any, effort arguing that the litigation of Katana's infringement claims would not be simplified by an IPR decision, likely because such arguments would be obviously ineffectual. A decision regarding the validity of Katana's patents would significantly simplify a fundamental preliminary question in this infringement suit—whether the subject patents are enforceable at all.

The bulk of Micron's argument contends that an IPR decision regarding validity is irrelevant to its bad-faith-assertion claim against Longhorn because Longhorn could have acted in bad faith in 2022 (when Katana first filed its infringement claim) *even if* Katana's asserted patents are subsequently found to be valid. It is true that a finding of validity by the PTAB will not totally foreclose Micron's bad-faith-assertion claim under the Act just as it is true that a finding of invalidity will not compel a judgment in Micron's favor. However, while the PTAB may not be addressing a *controlling* issue in its IPR, it is

MEMORANDUM DECISION AND ORDER - 11

certainly addressing an *informative* one. A finding in either direction would do much to simplify the court's analysis of Longhorn's subjective and objective bad faith—invalid patents suggesting a somewhat greater likelihood of bad faith and valid patents weighing in the opposite direction. Thus, the Court finds that this factor weighs in favor of granting the stay.

### 2. Completion of Discovery and Setting of a Trial Date

Under this factor, courts generally consider the extent to which the parties have engaged in the most burdensome stages of litigation—completion of discovery, preparation of experts, trial preparation, and the trial process. *See, e.g.*, *Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1005 (Fed. Cir. 2015); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). Here, discovery has yet to begin and a date for trial has yet to be set. While the Court acknowledges that the parties have already invested significant resources into this litigation, it cannot say that they have engaged in, or even initiated the most burdensome litigation stages. Thus, this factor weighs in favor of granting the stay.

### 3. Undue Prejudice or Tactical Disadvantage to Micron if Stay is Granted

In determining whether a stay will cause the non-moving party undue prejudice or subject them to a tactical disadvantage, courts look to various factors, including the proximity of the motion to trial and whether the parties are direct competitors. *See, e.g.*, *Smartflash LLC v. Apple Inc.*, 621 Fed. App'x 995, 1003 (Fed. Cir. 2015); *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011) ("[P]rejudice is heightened when parties to litigation are direct competitors; in such cases, courts

presume that a stay will prejudice the non-movant.").

Here, the Movants' motion could not have been filed in the face of an impending trial because no trial has been scheduled. Nor are the parties here direct competitors because neither Longhorn nor Katana creates products or offers services. Further, it would be hard to argue that awaiting the ruling of the PTAB would place Micron at a tactical disadvantage as a potential finding of invalidity would likely kill Katana's infringement claim and could harm Longhorn's defense against Micron's bad-faith-assertion claim.

Micron raises admittedly valid concerns about the dimming of memories and the loss of evidence. However, delay alone is not enough to establish that the prejudice one faces is "undue." *See, e.g.*, *Universal Remote Control*, 943 F. Supp. 2d at 1033 ("Mere delay in the litigation does not establish undue prejudice."); *Sorensen ex rel. Sorensen Research & Dev. Trust v. Black & Decker Corp.*, 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007) ("The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay."). Thus, because the Court cannot find that a stay will unduly prejudice Micron nor place it at a tactical disadvantage, this factor weighs in favor of granting the stay.

### 4. Summary

Because all three factors of the foregoing analysis favor the granting of a stay pending IPR by the PTAB, the Court finds that such a stay is appropriate.

### V. CONCLUSION

The Movants have successfully shown that their appeal of the Order to the Federal Circuit raises serious legal questions and that a stay pending a decision by the Federal

Circuit is in the public interest. Therefore, the Court agrees that a stay should be granted pending such a decision.

The Movants have also successfully shown that a stay pending IPR by the PTAB: (1) will simplify claims and issues at trial, (2) has been requested before the most burdensome aspects of litigation have commenced, and (3) will not be unduly prejudicial or tactically disadvantageous to Micron. Therefore, the Court also agrees that a stay should be granted pending a final decision by the PTAB regarding the two instituted IPRs—those governing the '879 patent and the '806 patent.

## VI. ORDER

The Court HEREBY ORDERS:

1. The Movants' Motions to Stay (Longhorn Dkt. 56; Katana Dkt. 69) are GRANTED, and the cases are stayed until: (1) the Federal Circuit Court renders a decision on the Movants' appeal, and (2) the PTAB renders a decision regarding the two instituted IPRs.

2. The parties will submit a status report within fourteen (14) days of any dispositive decision from the Federal Circuit or the PTAB.

DATED: November 2, 2023

David C. Nye
Chief U.S. District Court Judge